# Diehle *v.* United Gas Improvement Company, Appellant.

*Negligence—Gas company—Explosion of gas—Evidence.*

Where a gas company employs a watchman to patrol a street which is being excavated for a public improvement and to report immediately to the company as to any escape of gas, and such watchman is notified by several persons of the odor of escaping gas at a particular point, but makes no report to the company, and nine hours after he was first notified an explosion occurs resulting in personal injuries to a workman employed by the contractor for the improvement, the gas company will be liable in damages for the injuries sustained by the workman.

Argued Jan. 7, 1909. Appeal, No. 252, Jan. T., 1908, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1906, No. 2,491, on verdict for plaintiff in case of Charles C. Diehle v. The United Gas Improvement Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CARR, J.

The facts relating to the accident are stated in the opinion of the Supreme Court.

Plaintiff presented these points:

6. If the jury believe that injury, deterioration, settlement or misplacement of the gas mains of the defendant company, which existed at Sixth and Market streets on October 4 and 5, 1906, were a natural or probable consequence of any matter or thing, such as a sewer, a depression or a washout, which

existed there in close proximity to the said mains, and that the gas company, or its agents, had knowledge, or by the exercise of reasonable care could have had knowledge of such matter or thing for a sufficient length of time to have made a proper inspection' and repair, then it was the duty of the gas company and its agents to efficiently guard against any damage that was likely to result because of the presence of the said matter or thing in proximity to its said mains, and if you believe that such matter or thing existed in proximity to the defendant company's mains at Sixth and Market streets on October 4 and 5, and that the defendant company or its agents had knowledge or ought to have had knowledge of it, and that by reason of such matter or thing the mains of the gas company were displaced and an explosion brought about which injured this plaintiff, then it is for you to say whether or not the defendant company and its agents did everything that they reasonably could have done in view of the fact that they and their agents knew of it or by the exercise of reasonable care could have known of it, and if you believe that they and their agents did not take such proper precautions, then you would be justified in finding that the defendant company was negligent. *Answer:* Affirmed. [2]

7. If you believe that the defendant company, or its agents, either knew or ought to have known of any matter or thing such as a sewer, a depression or a washout, in the neighborhood of its gas mains at Sixth and Market streets on October 4 and 5, 1906, which would weaken or have a tendency to weaken same, or which would cause or have a tendency to cause its mains to become leaky, then it was in duty bound to take cognizance of the existence of such matter or thing, and to take whatever precautions were necessary to guard against injury to its pipes, and if you believe that it failed so to do, and that because of the said matter or thing, its system of mains and pipes subsequently became impaired and leaky, and that the said impairment and leakage was brought about because the said defendant company had not taken such special precautions, then you would be justified in finding the defendant company guilty of negligence. *An-*

*swer:* That is the rule, provided you determine and find that the defendant company, or its agents, had a sufficient period of time after the discovery of the defect to make the proper repair for the protection of its mains. [3]

Defendant presented these points:

1. The burden of proving either the specific act of negligence that caused the explosion, or such circumstances as would justify the inference that the degree of care required by the law was not observed by the defendant is upon the plaintiff. The plaintiff has failed to prove any specific act of negligence on the part of the defendant or any circumstances justifying the inference that the defendant was negligent. Your verdict must, therefore, be for the defendant. *Answer:* That point is refused. [4]

2. The plaintiff's statement of claim alleges that the defendant allowed its gas mains to be so out of repair and to get into such a leaky and dangerous condition that the gas which was supposed to be confined therein escaped therefrom and caused an explosion. There is no evidence in the case from which the jury would be justified in finding that any of the gas mains of the defendant became out of repair and got into a leaky and dangerous condition through any neglect on the part of or act committed by the defendant; there being no proof to support the allegation contained in the statement of claim, the plaintiff cannot recover in this action. *Answer:* That point is refused. [5]

3. There is no evidence in the case that the defendant or its employees had any actual knowledge that its mains were broken at the northwest corner of Sixth and Market streets prior to the explosion, nor is there any evidence of circumstances prior to the explosion which justify the inference that the defendant or its employees ought to have known that its mains were so broken. The defendant cannot be held to have been negligent in failing to repair the mains before the explosion, unless it appears that the defendant or its employees had either actual or implied knowledge of the existence of the breaks in the mains a sufficient time prior to the explosion to have had them repaired. As there is no such

evidence in this case, your verdict must be for the defendant. *Answer:* That point is refused. [6]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* were (2–6) above instructions, quoting them.

*R. Stuart Smith* and *Charles E. Morgan,* for appellant.— Not a single witness went farther than to say that there was an odor, that it was reported to Leans and that Leans "did nothing." What Leans did, if such reports were made to him, no man is competent to swear, unless he was with Leans every minute of the night. The man is dead, and there is a presumption that he did whatever his duty required. This presumption has not been rebutted by the plaintiff's witnesses.

The common-law presumption is, that every one does his duty until the contrary is proved: Penna. R. R. Co. v. Weber, 76 Pa. 157; Haughey v. Pittsburg Railways Co., 210 Pa. 363; Hanna v. P. & R. Ry. Co., 213 Pa. 157; Unger v. P. B. & W. R. R. Co., 217 Pa. 106.

Assuming that the jury might infer from the fact that witnesses smelled illuminating gas, that the gas in some manner somewhere came from the defendant company's system; still there can be no recovery unless the plaintiff also proves, either directly or circumstantially, that the gas escaped from the system through some negligent act or omission of the defendant. There cannot ordinarily be direct proof of negligence, but the books are full of cases where the result was accomplished by circumstantial evidence: Strawbridge v. Philadelphia, 2 Penny. 419; Morgan v. United Gas Imp. Co., 214 Pa. 109.

In every one of the recent gas cases where a recovery was permitted, there was evidence in addition to the mere escape of gas from the main, from which an inference of negligence on the part of the defendant could fairly and reasonably be drawn by the jury: Koelsch v. Philadelphia Co., 152 Pa. 355; Heh v. Consolidated Gas Co., 201 Pa. 443; Hartman v. Gas Co., 210 Pa. 19; Olive Stove Works v. Port Pitt Gas Co., 210

Pa. 141; McCoy v. Gas Co., 213 Pa. 367; Shirey v. Gas Co., 215 Pa. 399.

The law as applied in all these cases required the plaintiff at the trial to prove the condition of the mains, and this the plaintiff's counsel undertook to do.

When there is no evidence from which a jury could reasonably find that the defendant ought to have known of a dangerous condition in time to repair it, the courts have not hesitated to enter a nonsuit or to give binding instructions for the defendant: Aument v. Penna. Telephone Co., 28 Pa. Superior Ct. 610; Garland v. City of Wilkes-Barre, 212 Pa. 151; Yeager v. Berwick Borough, 218 Pa. 265.

*William H. Wilson,* with him *Joseph P. Rogers* and *Francis M. McAdams,* for appellee.—It is a well-settled principle of law that a higher degree of care and diligence is necessary in dealing with a dangerous agency, such as gas, than in the ordinary affairs of life or business, and the dealers in such dangerous agencies must take every reasonable precaution suggested by experience to guard against the escape of their gas: Koelsch v. Philadelphia Company, 152 Pa. 355; Shafer v. Lacock, 168 Pa. 497; Fisher v. Ruch, 12 Pa. Superior Ct. 240; Matthews v. Railroad Co., 18 Pa. Superior Ct. 10; Lewin v. Pauli, 19 Pa. Superior Ct. 447; Levinson v. Myers, 24 Pa. Superior Ct. 481.

The fact that the negligence of a third party concurs in bringing about an accident does not relieve the defendant where such negligence was a danger which he was bound to appreciate and provide against: Butterman v. McClintic-Marshall Construction Co., 206 Pa. 82; Railroad Co. v. Daugherty, 11 W. N. C. 437; Philadelphia & Reading R. R. Co. v. Anderson, 94 Pa. 351.

The case was for the jury: Oil City Gas Co. v. Robinson, 99 Pa. 1; Heh v. Gas Co., 201 Pa. 443; Shirey v. Gas Co., 215 Pa. 399; Lewis v. Boston Gas Light Co., 165 Mass. 411 (43 N. E. Repr. 178); Koplan v. Gas Light Co., 177 Mass. 15 (58 N. E. Repr. 183); Butcher v. Gas Co., 12 R. I. 149; Hartman v. Citizens' Nat. Gas Co., 210 Pa. 19; Lee v. Gas Light Co.,

98 N. Y. 115; Ottersbach v. Philadelphia, 161 Pa. 111; Olive Stove Works v. Gas Co., 210 Pa. 141; Philadelphia Co. v. Traction Co., 165 Pa. 456; McKenna v. Gas Co., 198 Pa. 31.

OPINION BY MR. JUSTICE BROWN, October 11, 1909:

On the argument of this appeal we were much impressed by what was said by the learned counsel for appellant in asking us to reverse the judgment in favor of the appellee, but our subsequent examination of the evidence has satisfied us that the single question in the case—appellant's negligence —was for the jury.

That the appellee was injured by an explosion of gas which came from the pipes of the appellant was clearly established. At the time of the explosion he was in the employ of the Millard Construction Company, which was engaged in excavating the bed of Market street, between Sixth and Seventh streets, in the city of Philadelphia, for the construction of a subway. The excavation was on the north side of Market street, just west of Sixth. Its north edge was about two feet south of the north curb of Market street. The appellant, the United Gas Improvement Company, maintained certain gas mains at the corner of Sixth and Market streets. A ten-inch main ran east and west on Market street, between the north curb of that street and the north line of the excavation. A six-inch main ran north and south on Sixth street, three feet and ten inches east of the west curb of that street. It crossed and connected with the ten-inch main on Market street through an appliance called a "cross," which was also north of the subway excavation. To guard against any injury which might result from the escape of gas from its pipes at Sixth and Market streets, where the excavation for the subway was in progress, the appellant had employed a man named Leans, whose duty it was to patrol both sides of the street that was being excavated for the purpose of detecting the odor of escaping gas, and, if the same was detected, to report the escape at once to the company's office. William H. Smith, a superintendent of the defendant company, testified as follows: "We had a man named Frank Leans that we

called a watchman. His duties were to patrol both sides of the street that was excavated looking for any defects so far as the odor of gas was concerned and report to our office. . . . Q. Was Mr. Leans the only man there in the employ of the United Gas Improvement Company, and was he stationed at that very section at night on the night of October 4th? A. He was the only man under instruction to patrol. Q. And to report any trouble? A. Yes, sir. . . . Q. What was your system at night when no work was being done by the construction company? A. We simply kept the watchman for to patrol in case there would be any settlement and bring about a rupture of the pipe and, consequently, the odor of gas, and he would notify us. . . . Q. You said that it was a part of Mr. Leans' duty if there was an unusual odor of gas there to report it to the office, is that so? A. Yes, sir." The following is from the testimony of Samuel B. Turnier, a foreman employed by the appellant and called as a witness by it: "Q. Leans was the only night man you had there that night? A. Yes, sir. Q. He was under your control; you were his boss? A. To start him in at night. He had a paper where he had to go around—he would leave the box, you see, and he would go around and come down to Broad and Arch, and he would 'phone and keep going all the time. Q. He made all his reports by 'phone there at Broad and Arch? A. Yes, sir; and if anything happened, and he had 'phones all around the neighborhood. Q. He had 'phones all around the neighborhood which were there for his use? A. No, not only for his use. Q. But he was instructed to use them in case there was anything wrong? A. Yes, sir." After stating that the duty of his men was to notify him at once if there was any faint smell of gas, no matter where it was, this witness further testified as follows: "Q. That was also Leans' duty was it, the night man? A. He was to report right to the office. Q. It was his duty if there was a faint odor of any gas to make a report? A. Not to go near it himself but to call the office. Q. To call whoever were in charge of the office and notify them to that effect? A. Yes, sir; he was in my charge when I started in at night. To be sure there was

a man there at night. Q. And you told him when he started in that if he smelled any gas he should report it to the office? A. Not only that, but the next morning he should give me a note of what happened. . . . Q. Your men, that is, the employees of the United Gas Improvement Company, were the only men who were permitted to make any repairs or have anything to do with your gas mains? A. Yes, sir. Q. You would not permit anyone else to have anything to do with it? A. Yes, sir, even if there was a dead main along there we would not allow anyone else to break it out."

Leans was on duty on the night of October 4, 1906, and was told by the appellee, between nine and ten o'clock, that there was an "awful leak" of gas at Sixth and Market streets. The appellee had noticed the odor of gas throughout the entire day, which seemed to grow stronger towards evening. Other witnesses testified that they noticed this odor during the night and, as the night wore on, it became heavier. The reply of Leans to the appellee, when told of the escaping gas, was, "Go on back, that is all right, there is no danger there." This, without more, was sufficient to submit to the jury the question of the appellant's negligence. The explosion occurred at 6:30 on the morning of October 5, and the appellant had received actual notice of the escaping gas nine hours before. Well knowing the duty that rested upon it of exercising a high degree of care to prevent the escape of the dangerous substance under its exclusive control, and of promptly staying such escape when notified of it, the appellant had employed a watchman to give it instant notice of any escape of its gas; but he was faithless, and the law charges his infidelity to it. Notice to him of the escaping gas was notice to his employer, and, no matter how it escaped, the company could not permit the escape to go on imperiling life and property. Its unquestioned duty was to act the instant the escape was brought to its attention. Much more, however, was proved than the notice to Leans between nine and ten o'clock of the night of October 4th that the gas was escaping. At about two o'clock on the morning of the 5th Diehle hunted him up and told him that the gas was so strong

he could not work. Leans walked up with him to the hole at Sixth and Market streets where he had been working, but declined to do anything. For an hour or two before this there had been a heavy rainfall, and there were holes and depressions in the street, to which the attention of Leans was called, but again he did nothing. His reports to his company throughout the night were that everything was "O. K." That he failed in the discharge of the duty which had been imposed upon him by his employer was a fact that the jury were bound to find. As stated, nine hours before the explosion occurred he was first told of the escaping gas, and continually afterwards by several persons, but he paid no heed to it. If he had reported promptly, as was his duty, the cause of the escaping gas might have been discovered and the flow stopped. If the escape of gas was due to the fracture of the pipes, caused by their sinking after having been undermined by the rain or by water from a broken sewer, the gradual sinking might have been stayed within the time that elapsed between the discovery of the holes and the depression in the street and the explosion, and the fracture might have been prevented. Without taking from the jury the question of a leak from a defective joint, the court expressed the opinion that the weight of the evidence was that the gas had not so escaped. The finding of the jury evidently was that the escape was due to a fracture in the pipe, but, be this as it may, under the evidence there were three questions of fact for their determination, which were resolved against the defendant: First, was the gas escaping from the pipes of the defendant company for nine hours before the explosion occurred? Second, did the employee of that company, whose special duty it was to be on the watch for escaping gas, know that it was escaping and fail to give notice to the company? And, third, was there sufficient time after he knew the gas was escaping to have stayed the further escape before the explosion occurred?

The answers to the points, which are assigned as error, were correct, and, as the case could not have been taken from the jury, the judgment is affirmed.